## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL EVANS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 20-1663 (EJW) |
| | ) | **CONSOLIDATED** |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| DOC COMMISSIONER CLAIRE | ) | |
| DEMATTEIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Steven P. Wood, Chelsea A. Botsch, MCCARTER & ENGLISH, LLP, Wilmington, DE.

*Counsel for Plaintiffs*


Zachary S. Stirparo, STATE OF DELAWARE, DEPARTMENT OF JUSTICE, Wilmington, DE.

*Counsel for Defendants*


## <u>MEMORANDUM OPINION AND ORDER</u>


April 30, 2024
Wilmington, Delaware

**WALLACH, *Circuit Judge*, sitting by designation.**

On November 14, 2022, nearly 100 inmates ("Plaintiffs") in the custody of the Delaware Department of Correction ("DOC"), either currently incarcerated at, or recently released or transferred from, the Howard R. Young Correctional Institution ("HRYCI"), filed their first amended putative class action complaint[1] ("Amended Complaint") (D.I. 519) under 42 U.S.C. §§ 1983 and 1988 against state officials who allegedly oversaw the HRYCI's response to the COVID-19[2] pandemic (collectively "Defendants").[3]  *See generally* D.I. 519 at 1–6.  Plaintiffs allege three counts,[4] "for violations of their constitutionally protected rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and Article [I], Section 11 of the Delaware Constitution."  D.I. 519 at 2.

Plaintiffs' putative "Class" is defined as "all persons confined at HRYCI in 2020, 2021, and 2022, including as subclasses: (i) persons exposed to and formally diagnosed with COVID-19 while detained at HRYCI, and (ii) persons exposed to COVID-19 while detained at HRYCI that showed symptoms of COVID-19."  D.I. 519 ¶ 60.  On May 8, 2023, Defendants filed their Motion

---

[1] On November 4, 2021, two related lawsuits were consolidated into this case.  *See Evans v. DeMatteis*, No. 20-1663 (MN), 2021 WL 5141067, at *1 (D. Del. Nov. 4, 2021).

[2] Plaintiffs state that "COVID-19 is a highly infectious and potentially deadly disease caused by the newly discovered SARS-CoV-2 virus."  D.I. 519 ¶ 21; *see also Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 157 n.2 (3d Cir. 2020) ("COVID-19 is a highly contagious respiratory virus that poses unique risks in population-dense facilities." (citing *United States v. Raia*, 954 F.3d 594, 595–96 (3d Cir. 2020))).

[3] Named Defendants include: (1) Claire DeMatteis, current Secretary of the Delaware Department of Human Resources and former DOC Commissioner; (2) Monroe B. Hudson, Jr., current DOC Commissioner; (3) Kolawole Akinbayo, HRYCI's current Warden; (4) Christopher Kearney, HRYCI's current Deputy Warden; and (5) Karl A. Sturgill, HRYCI's former Deputy Warden.  *See* D.I. 519 at 2.

[4] In the Amended Complaint, Count One relates to Plaintiffs' Fifth Amendment claim, Count Two relates to Plaintiffs' Eighth Amendment claim, and Count Three relates to Plaintiffs' claim under Article I, Section 11 of the Delaware Constitution; however, the Amended Complaint does not specify any count grounded in the Fourteenth Amendment.  *See* D.I. 519 ¶¶ 65–84.

to Dismiss the Amended Complaint ("Motion to Dismiss" or "Motion") (D.I. 540) under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, as well as their Opening Brief in Support of Their Motion (D.I. 541). On June 30, 2023, Plaintiffs filed their Answering Brief in Opposition to Defendants' Motion (D.I. 549). On August 25, 2023, Defendants filed their Reply Brief in Support of Their Motion (D.I. 554). Defendants' Motion is now ripe for review.[5] For the below reasons, the Court grants Defendants' Motion.

## I.   BACKGROUND

In 2020, the COVID-19 pandemic significantly changed daily life in the United States and around the world. D.I. 519 ¶ 1. The inmates at HRYCI were especially vulnerable to COVID-19 because they lived in close proximity to one another, D.I. 519 ¶ 1, and they relied on DOC for safety measures to stop the spread of COVID-19 at HRYCI. D.I. 519 ¶ 2. However, Plaintiffs allege that Defendants "did nothing to protect the inmates." D.I. 519 ¶ 3. Defendants failed to implement any social distancing protocol, as the inmates regularly gathered and interacted with one another within and outside of their living areas. D.I. 519 ¶¶ 51–56. Even the inmates who wanted to practice social distancing "were forced to break social distancing rules in order to utilize common areas and engage in activities required by Defendants." D.I. 519 ¶ 52.

Plaintiffs further allege that Defendants did not conduct regular testing for COVID-19 and made false public statements about low rates of COVID-19 transmission among the inmate population at HRYCI. D.I. 519 ¶¶ 36–37. Defendants also allegedly refused to provide Plaintiffs with any personal protective equipment for many months in 2020, and when Defendants finally provided disposable paper masks, many inmates and HRYCI staff did not wear masks because

---

[5]     The Court acknowledges that the Parties did not request oral argument and concludes that it is unnecessary here to decide the Motion. *See* D. Del. LR 7.1.4 ("An application for oral argument shall be in writing and shall be made no later than 7 days after service of a reply brief.").

Defendants did not mandate wearing masks within the facility.  D.I. 519 ¶¶ 45–46.  Plaintiffs claim that they could not clean or disinfect their living areas because they did not have access to hand sanitizers and cleaning supplies.  D.I. 519 ¶¶ 47–48.  Lastly, Plaintiffs allege that they could not file grievances related to Defendants' failure to protect them from COVID-19, and even if some of them did, they did not receive any response.  D.I. 519 ¶¶ 57–59.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the court to hear a claim.  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  When the court's jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden to prove that jurisdiction exists.  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A motion under Rule 12(b)(1) can mount either a facial or factual attack.  *See Lincoln*, 800 F.3d at 105.  "In reviewing a facial challenge, which contests the sufficiency of the pleadings, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *In re Schering*, 678 F.3d at 243 (quoting *Gould Elecs., Inc., v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).  On the other hand, in reviewing a factual challenge, the court weighs evidence outside the pleadings to resolve factual issues in determining its power to hear the claim.  *Lincoln*, 800 F.3d at 105; *Mortensen*, 549 F.2d at 891.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In reviewing a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded allegations as true, viewing them in the light most favorable to the plaintiff.  *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (cleaned up); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The factual allegations must be pleaded sufficiently to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true . . . ." *Twombly*, 550 U.S. at 555.

## III.   DISCUSSION

Defendants move to dismiss Plaintiffs' Amended Complaint, among other reasons, because (1) Plaintiffs lack standing; (2) the requested monetary damages and injunctive relief are either unavailable to Plaintiffs or moot; (3) Counts One and Three fail as a matter of law; and (4) Plaintiffs fail to plausibly plead each Defendant's personal involvement in a 42 U.S.C. § 1983 action.  *See generally* D.I. 541.  The Court addresses each argument in turn.

### A.   Plaintiffs have standing, where they allege suffering an actual injury by contracting COVID-19, as well as redressability with certain requested relief that reduces the spread of the disease considering their circumstances as inmates.

Defendants move to dismiss the Amended Complaint under Rule 12(b)(1),[6] insisting that Plaintiffs lack standing to challenge DOC's response to the COVID-19 pandemic because they

---

[6]     The Parties do not appear to dispute that Defendants set forth a facial (not factual) challenge to Plaintiffs' standing to sue.  *See* D.I. 549 at 8 ("It is clear that Defendants are attacking the [Amended Complaint] facially."); *see also* D.I. 554 at 6–7 (no apparent dispute with Plaintiffs' observation that Defendants made a facial attack).  Here, the Court reviews the Amended

demonstrate neither a cognizable injury-in-fact nor redressability with their requested relief. *See* D.I. 541 at 14–15. Under Article III of the United States Constitution, federal courts' subject matter jurisdiction is limited to certain "Cases" or "Controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Plaintiffs must establish their standing to sue, which is an element of the case-or-controversy requirement. *Id.*; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("The party invoking federal jurisdiction bears the burden of establishing standing." (cleaned up)). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper*, 568 U.S. at 409 (cleaned up). In other words, Plaintiffs must demonstrate three elements: (1) injury-in-fact; (2) causation; and (3) redressability. *See Finkelman*, 810 F.3d at 193. Here, Defendants challenge Plaintiffs' ability to meet the first and third elements. *See* D.I. 541 at 14–15 (no apparent challenge to the second element, causation[7]). To allege an injury-in-fact, Plaintiffs must claim "the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Finkelman*, 810 F.3d at 193 (cleaned up). Also, redressability requires Plaintiffs "to show that it is likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision." *Id.* at 194 (cleaned up).

---

Complaint's factual allegations in evaluating Plaintiffs' Article III standing arguments, *see Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) ("When assessing standing on the basis of the facts alleged in a complaint, this means we apply the same standard of review we use when assessing a motion to dismiss for failure to state a claim."), and "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *In re Schering*, 678 F.3d at 243 (quoting *Gould*, 220 F.3d at 176).

[7]      Although not at issue here, the Court concludes that Plaintiffs have met the second element of standing, causation, based on "a causal connection between the injury and the conduct complained of," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), i.e., Plaintiffs' contraction of COVID-19 and Defendants' failure to protect inmates from the spread of the disease and to "take adequate measures to control the spread of COVID 19," D.I. 519 ¶¶ 3, 5.

Plaintiffs allege that they "suffered unusual mental stress due to the constant threat of exposure . . . ." D.I. 519 ¶ 3. Defendants argue that there is no concrete injury from Plaintiffs' "fear that [they have] been, or might be, exposed to COVID-19 . . . ." D.I. 541 at 14 (citing *Gaffney v. Artis*, No. 1:22-cv-275, 2023 WL 2753168, at *2 (W.D. Mich. Apr. 3, 2023) (concluding that the plaintiff's "fear that he was exposed to COVID-19 or might have contracted COVID-19 is not a concrete injury which can be redressed by an award of damages," and dismissing the plaintiff's claims for lack of standing)). To the extent that Plaintiffs allege facing the threat of exposure to COVID-19 without contracting the disease, the Court agrees with Defendants and dismisses such claims for lack of standing for alleging "nothing akin to an impending injury." *Balas v. Stanish*, No. 3:21-0466, 2021 WL 5500512, at *4 (M.D. Pa. Nov. 23, 2021) ("Missing here is any allegation of actual injury attributed to [the d]efendants' alleged placing of [the plaintiff] in proximity with [COVID-19] infected inmates.").

On the other hand, "the standing analysis looks not only at the claim asserted but also the relief sought." *Gaffney*, 2023 WL 2753168, at *2; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) (acknowledging that "a plaintiff must demonstrate standing for each claim he seeks to press . . . [as well as] must demonstrate standing separately for each form of relief sought"). Unlike the plaintiff in *Gaffney*, Plaintiffs here allege that they did contract COVID-19 and seek injunctive relief as well as monetary damages. *Compare Gaffney*, 2023 WL 2753168, at *2 (noting that the plaintiff feared for his safety when alleging exposure to and not contraction of COVID-19, that he was "no longer housed at the Brooks Correctional Facility," and only requested monetary damages, not "any form of injunctive relief"), *with* D.I. 519 ¶¶ 8–10. Defendants appear to argue that there cannot be an injury after contracting COVID-19,

where Plaintiffs were "treated" and "vaccinations against COVID-19 are available."[8]  D.I. 541 at

14–15.  Here, Plaintiffs' allegation of contracting COVID-19 is an injury that would be "actual or

imminent, not conjectural or hypothetical," *Finkelman*, 810 F.3d at 193 (citation omitted), despite

the COVID-19 pandemic being declared no longer an emergency, *see* D.I. 541 at 9, when

considering the disease's potential long-term effects,[9] *see* D.I. 519 ¶ 1 ("[T]he risk of permanent

lung scarring, other long-term health effects, and death is both recognized and real.").

    Next, Defendants contend that Plaintiffs do not demonstrate the redressability element,

when failing to show that a favorable decision would be "'likely, as opposed to merely

speculative,' to redress their alleged injury," which is supposedly Defendants' failed response to

---

[8]    Defendants cite *Omoyosi v. Tex. Health & Hum. Servs. Comm'n*, No. 4:20-cv-03315, 2021 WL 2689851, at *3 (S.D. Tex. June 14, 2021), *report and recommendation adopted*, No. 4:20-cv-03315, 2021 WL 2685631 (S.D. Tex. June 30, 2021), to insist that Plaintiffs fail to allege specific injuries and instead use their Amended Complaint as a vehicle to challenge DOC's response to the COVID-19 pandemic, *see* D.I. 541 at 15.

[9]    The Court agrees with Plaintiffs, *see* D.I. 549 at 11–12, that unlike the plaintiff in *Omoyosi* who "failed to identify any particularized, concrete injury he has suffered as a result of the [d]efendant's response to the COVID-19 pandemic," when asserting a special interest in the defendant's response to the pandemic as a "self-described 'Black-American man, Healthcare Provider, and Texan[,]'" *Omoyosi*, 2021 WL 2689851, at *3, Plaintiffs here contracted COVID-19 under Defendants' custody, *see* D.I. 519 ¶¶ 8–10; *see also* D.I. 549 at 10 ("The contraction of COVID-19 and suffering of COVID-19 symptoms is therefore an actualized, cognizable injury, and Defendants cite to no case law that says otherwise.").  Defendants note that in *Garrett v. Murphy*, 17 F.4th 419 (3d Cir. 2021), "the Third Circuit held that there was no longer an imminent risk because although [the plaintiff] contracted COVID-19, he possessed a natural immunity after having done so."  D.I. 554 at 6 (citing *Garrett*, 17 F.4th at 433).  Specifically, where the plaintiff in *Garrett* attempted to proceed in forma pauperis under 28 U.S.C. § 1915(g), *see id.*, the Third Circuit concluded that the plaintiff "ha[d] not met his burden of showing imminent threat of serious physical injury," as he previously had COVID-19 and his "risk of getting sick with COVID-19 [was] therefore no longer 'imminent'—it ha[d] already occurred," *Garrett*, 17 F.4th at 433 ("Protected by natural immunity, [the plaintiff] has not shown that continued exposure to COVID-19 still puts him at imminent risk of serious physical injury.").  Here, unlike in *Balas*, 2021 WL 5500512, at *4 ("Missing here is any allegation of actual injury . . . ."), the Court concludes that Plaintiffs allege an actual injury when contracting COVID-19, where they allege that there are potential long-term effects to their health and they do not need to allege that they are under "imminent threat of serious physical injury" because actual injury would be sufficient.

the COVID-19 pandemic.  D.I. 541 at 15 (quoting *Lujan*, 504 U.S. at 561 (cleaned up)); *see also*

D.I. 554 at 7 ("[I]t is unlikely that a favorable decision in this matter would redress this alleged

injury.").  Plaintiffs clarify that their alleged injury is not Defendants' failed response, but rather

that they "contracted and suffered various symptoms of COVID-19 while fearing continued

uncontrolled exposure to COVID-19."  D.I. 549 at 12.  Although Defendants highlight that "DOC

has already implemented extensive measures[10] to combat COVID-19," and "there exists no

---

[10]     Defendants request the Court to take judicial notice of DOC's response to COVID-19 based
on statements from government websites.  *See generally* D.I. 541 at 5–9, 11; *see also* D.I. 542
(Declaration of Zachary S. Stirparo); D.I. 542-1 (Exhibits A–AC).  Plaintiffs object.  *See* D.I. 549
at 6 ("Such would be inappropriate at this stage in the proceedings, as discovery will either prove
or disprove their factual assertions.").

     At this time, the Court declines to exercise its discretion to take judicial notice over
Defendants' exhibits, *see generally* D.I. 542-1, because the Parties appear to dispute the accuracy
of the information as applied to HRYCI, and the Court does not reach the question of whether
Defendants were deliberately indifferent with respect to Plaintiffs' Eighth Amendment claim, *see
infra* Section III.D; *see also Gibbs v. Carney*, No. 20-cv-01301-SB, 2022 WL 3681327, at *3
(D. Del. Aug. 25, 2022) [hereinafter *Gibbs I*] ("[The defendants] say they did not disregard the
risk COVID posed, but took reasonable measures to combat it.  In support, they ask that I consider
their publicly available COVID policies, and *the prisoners do not object*.  I will do so." (emphasis
added)), *appeal dismissed sub nom. Gibbs v. Governor of Delaware*, No. 22-2725,
2022 WL 19039032 (3d Cir. Nov. 10, 2022) [hereinafter *Gibbs II*]; *Brown v. May*,
No. 21-365-CFC, 2021 WL 7209444, at *3 (D. Del. Dec. 17, 2021) (taking judicial notice of
"information, as it is publicly available on a governmental website[,]" to conclude that the plaintiff
fails to state a claim for an Eighth Amendment violation); *Vanderklok v. United States*,
868 F.3d 189, 205 n.16 (3d Cir. 2017) (first taking judicial notice of "information [that] is publicly
available on government websites"; then citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,
998 (9th Cir. 2010)); *Daniels-Hall*, 629 F.3d at 998–99 ("It is appropriate to take judicial notice
of this information, as it was made publicly available by government entities (the school districts),
*and neither party disputes the authenticity of the web sites or the accuracy of the information
displayed therein.*" (emphasis added)).

     The Court observes without opining that these exhibits largely focus on DOC's general
response to COVID-19, not necessarily to Defendants' response at HRYCI.  *See generally*
D.I. 542-1; *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In
evaluating a motion to dismiss, we may consider documents that are attached to or submitted with
the complaint, and any matters incorporated by reference or integral to the claim, items subject to
judicial notice, matters of public record, orders, and items appearing in the record of the case."
(internal citation omitted) (cleaned up)).  Should Defendants continue to rely on these exhibits,

ongoing state of emergency concerning COVID-19 that necessitates the implementation of COVID-19 measures or the following of CDC guidelines," D.I. 541 at 15, Plaintiffs counter that they allege the "DOC *did not* implement 'extensive' measures, and any measures that ever were taken were *not enforced*," D.I. 549 at 12 (emphases added) (citing D.I. 519 ¶¶ 4, 36, 38, 41, 46, 53), as well as that "whether there is an ongoing state of emergency is irrelevant for prison inmates, as there circumstances in relation to the ability to spread and contract COVID-19 are much different than that of the average citizen," D.I. 549 at 12–13 (citing D.I. 519 ¶¶ 30–34).

Accordingly, the Court concludes that at this stage in the litigation, Plaintiffs have demonstrated the likelihood of a favorable decision with their requested relief. Such relief would likely redress Plaintiffs' ability to control their personal exposure to COVID-19, when the Amended Complaint's facts are read in the light most favorable to Plaintiffs, who as prison inmates

---

*see, e.g.*, D.I. 541 at 5–9, 11, they may consider indicating within a declaration or affidavit which statements made within each exhibit are representative of their response at HRYCI.

Moreover, Defendants insist that "Plaintiffs exclaim that Defendants 'repeatedly and publicly misrepresented that COVID-19 had not spread through HRYCI and that all CDC COVID-19 prevention recommendations were followed' and argue such allegation places this case outside of the purview of *Gibbs* and *Brown*." D.I. 554 at 4–5 (quoting D.I. 519 ¶ 36). Defendants further contend that "Plaintiffs' general claims that Defendants 'misrepresent' sound 'in the nature of fraud' and should be pled with particularity." D.I. 554 at 5; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Here, the Court acknowledges that Plaintiffs bring their Amended Complaint against individual Defendants under 42 U.S.C. §§ 1983 and 1988, *see* D.I. 519 at 2, and dismisses without prejudice Count Two – Counts One and Three are dismissed with prejudice for Plaintiffs' failure to state a claim as a matter of law – for Plaintiffs' failure to plausibly plead each Defendant's personal involvement in a 42 U.S.C. § 1983 action, *see infra* Sections III.C & III.D, which under a Rule 12(b)(6) motion must "meet the liberal notice pleading requirements of Rule 8(a)," *Evancho v. Fisher*, 423 F.3d 347, 355 (3d Cir. 2005); *see also id.* at 353 ("[U]nder the liberal notice pleading standard of Rule 8(a), [the plaintiff's] amended complaint fails to allege facts that, if proven, would show [the defendant's] personal involvement in [her] transfer. The Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible.").

have circumstances[11] that do not allow for isolation of infected inmates or social distancing rules, *see, e.g.*, D.I. 519 ¶¶ 53–55, and who desire, among other things, consistent (not sporadic) availability of: "(1) masks to protect from the spread of the virus, (2) cleaning materials or adequate cleaning services to prevent the spread of this highly transmissible virus, and (3) testing for exposure to COVID-19," *see* D.I. 519 ¶ 4.

Thus, Plaintiffs have demonstrated standing by showing injury-in-fact, causation,[12] and redressability of their claims.

**B. Some of Plaintiffs' requested monetary damages and injunctive relief are either unavailable here or moot.**

    *a. Plaintiffs' claims for injunctive relief based on state law and for any monetary damages against Defendants in their official capacities are dismissed with prejudice.*

Defendants insist that it is "unclear" from the Amended Complaint "if Plaintiffs are suing Defendants in their individual capacity, official capacity, or both." D.I. 541 at 24. Under Third Circuit precedent, the Court first looks to the Amended Complaint and course of proceedings, to determine whether Plaintiffs sued Defendants in their individual capacities, official capacities, or both. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) [hereinafter *Melo I*], *aff'd*, 502 U.S. 21

---

[11]    Defendants assert that "the *availability* of COVID-19 vaccinations does not render the injury imminent," D.I. 554 at 7 (emphasis added); *see also Garrett*, 17 F.4th at 433 ("[T]o the extent [the plaintiff] believes that he remains at serious risk of physical injury or death, effective COVID-19 vaccines are widely available, and [the plaintiff] has not shown he lacks proper access to the vaccine."), but that does not tell the Court if Plaintiffs are even vaccinated from the disease (i.e., optional or mandatory vaccinations), if their vaccinations are up to date (i.e., original vaccination shots and booster shots), or if they suffered any actual injury from long-term health effects from their first contraction of COVID-19 before the vaccination became widely available. Simply put, the Court has incomplete knowledge. Defendants may choose to provide this Court with declarations or affidavits on these and other matters, including whether they enforced HRYCI's staff and inmates to wear face masks before vaccinations were readily available. *See, e.g.*, D.I. 519 ¶ 4 ("Defendants failed to enforce any regulation requiring inmates and staff to wear masks—if such regulations existed at all.").

[12]    *See supra* note 7.

(1991) [hereinafter *Melo II*].  Plaintiffs respond, however, that they sued Defendants under both capacities.  *See* D.I. 549 at 23 ("Where, as here, a complaint lists the defendants by name and job title and neither the State nor its operating entities are sued, this Court should assume that Defendants are being sued in both their individual and official capacities." (emphasis removed) (citing *West v. Emig*, No. 13-2103 (MN), 2021 WL 1226489, at *8 (D. Del. Mar. 31, 2021))).  Defendants reply that in their official capacities, they are immune under the Eleventh Amendment from monetary damages based on Plaintiffs' federal claims, as well as monetary damages and injunctive relief based on Plaintiffs' state law claim.  *See* D.I. 554 at 10 (no apparent complaint for lack of notice of Plaintiffs' intention to sue Defendants in both their official and individual capacities).

Defendants move to dismiss with prejudice Plaintiffs' claims for monetary damages because they are immune in their official capacities.  D.I. 541 at 24; *see also* D.I. 554 at 10.  The Court agrees to the extent that Defendants are sued in their official, not individual, capacities under 42 U.S.C. § 1983 ("Section 1983").  *See, e.g., Malhan v. New Jersey*, No. 21-2969, 2023 WL 1793873, at *3 (3d Cir. Feb. 7, 2023) ("Money damages are not available when a state official is sued in his or her official capacity under 42 U.S.C. § 1983." (citing *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 240–41 (3d Cir. 2010))); *see also Melo I*, 912 F.2d at 635 ("[The Eleventh Amendment] also bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury.").  Accordingly, the Court dismisses with prejudice Plaintiffs' claims for monetary damages against Defendants in their official capacities.

Defendants also cite to Supreme Court and Third Circuit precedent, to argue that the Court cannot grant Plaintiffs injunctive relief based on Article I, Section 11 of the Delaware Constitution

11

("Article I, Section 11").  *See* D.I. 541 at 15–16 (first citing *Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 106 (1984); then citing *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95,

103 (3d Cir. 2008)); *see also* D.I. 541 at 25 ("Defendants would also be immune from Plaintiffs'

third count under DEL. CONST. art. I, § 11.").  After Plaintiffs clarified that they sued Defendants

in their official and individual capacities, *see* D.I. 549 at 23, Defendants contend that Plaintiffs'

claim under Article I, Section 11 "should be dismissed as it concerns both money damages and

injunctive relief against Defendants in their official capacities."  D.I. 554 at 10.  The Court agrees

with Defendants to the extent that Plaintiffs seek any monetary damages and injunctive relief under

Article I, Section 11 against Defendants in their official capacities.

Under Third Circuit precedent, "federal courts do not have subject matter jurisdiction to

enjoin state officials on the basis of state law."  *Doe*, 513 F.3d at 103 (citing *Pennhurst*,

465 U.S. 89).  In *Pennhurst*, the Supreme Court acknowledged that

> A federal court's grant of relief against state officials on the basis of state law,
> whether prospective or retroactive, does not vindicate the supreme authority of
> federal law.  On the contrary, it is difficult to think of a greater intrusion on state
> sovereignty than when a *federal court instructs state officials on how to conform
> their conduct to state law*.  Such a result conflicts directly with the principles of
> federalism that underlie the Eleventh Amendment.[13]

*Pennhurst*, 465 U.S. at 106 (emphasis added).  Plaintiffs sued Defendants who are state officials,

*see* D.I. 519 at 2, and the Parties do not dispute that Article I, Section 11 is a state law.[14]  Although

---

[13]     *See Pennhurst*, 465 U.S. at 97 (quoting U.S. Const. amend. XI ("The Judicial power of the
United States shall not be construed to extend to any suit in law or equity, commenced or
prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects
of any Foreign State.")).

[14]     *See, e.g.*, D.I. 519 ¶ 83 ("Defendants' conduct as aforesaid violates Plaintiffs' State
Constitutional rights."); D.I. 541 at 3 ("The Court should decline to exercise supplemental
jurisdiction over Plaintiffs' Delaware constitutional claim because the claim raises a novel issue
of state law and Plaintiffs' federal claims should be dismissed."); D.I. 549 at 24 ("Rather, the Court
should still consider the appropriateness and economy of considering Plaintiffs' state law claim
alongside their federal claims.").

Plaintiffs argue that "[c]laims against Defendants in their official capacity for prospective injunctive relief are not barred by the Eleventh Amendment," D.I. 549 at 23 (citing *Ex parte Young*, 209 U.S. 123 (1908)), the Supreme Court has foreclosed this argument here to the extent that *Young* is "inapplicable in a suit against state officials on the basis of state law," *Pennhurst*, 465 U.S. at 106.

On the other hand, "[t]he Supreme Court cases expressly recognize that individual capacity suits may be brought against government officials who acted under color of state law." *Melo I*, 912 F.2d at 637 (collecting cases); *see also West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). Here, Plaintiffs insist that they also sued Defendants in their individual capacities, which are claims not barred by the Eleventh Amendment, *see* D.I. 549 at 23 (citing *Melo II*, 502 U.S. at 30–31), and explicitly seek punitive and compensatory damages against Defendants individually, *see* D.I. 519 ¶¶ 9–10 (mentioning that Plaintiffs "seek an award of punitive damages against all individual Defendants[,]" and "seek compensatory damages for their pain, suffering, mental anguish, and emotional distress"). Specifically, Plaintiffs allege that Defendants were "acting under color of State law," had "authority to, and did, act in concert" with each other "in developing, implementing, and carrying out policies and procedures for HRYCI and in failing to develop, implement, or carry out policies designed to protect the health and safety of inmates incarcerated at HRYCI from risk of infection of COVID-19." D.I. 519 ¶¶ 16–20.

In sum, Plaintiffs may continue to seek injunctive relief against Defendants in their official capacities "challenging the constitutionality of a state official's action," *Pennhurst*, 465 U.S. at 102 (citing *Young*, 209 U.S. 123), as well as monetary damages against Defendants in their

individual capacities (but not in their official capacities).[15]   The Court acknowledges that Defendants found the Amended Complaint "unclear" as to whether they were sued "in their individual capacity, official capacity, or both." D.I. 541 at 24. Based on the Amended Complaint and the course of proceedings so far, the Court dismisses without prejudice Plaintiffs' claims to injunctive relief and monetary damages that may survive another day and are consistent with this Memorandum Opinion and Order, to allow Plaintiffs to assert with specificity and remove "any remaining ambiguity" on whether they seek either injunctive relief or monetary damages against Defendants in their official or individual capacities for each claim, and to ensure "that the allegations in the complaint[] adequately put [Defendants] on notice"[16] of the claims. *Melo I*, 912 F.2d at 636–37.

> *b. Plaintiffs' claims for injunctive relief relating to their conditions of confinement are dismissed as moot for former HRYCI inmates who have been transferred or released already but are dismissed without prejudice for current inmates at HRYCI.*

Defendants move to dismiss Plaintiffs' request for injunctive relief for failure to state a claim under Rule 12(b)(6), insisting the relief is now moot. *See generally* D.I. 541 at 10–14. Defendants argue that Plaintiffs include those "recently released or transferred from HRYCI," D.I. 541 at 11 (quoting D.I. 519 ¶ 14 (cleaned up)), and that injunctive relief is unavailable for Plaintiffs no longer at HRYCI, *see* D.I. 541 at 11. The Court agrees. To the extent that Plaintiffs are "recently released or transferred from HRYCI," their claims for injunctive relief relating to

---

[15]   This Court acknowledges that because Count One relating to Plaintiffs' Fifth Amendment claim and Count Three relating to Plaintiffs' Article I, Section 11 claim are dismissed with prejudice, *see infra* Section III.C, Plaintiffs' requests for any monetary damages and injunctive relief would be unavailable on that basis here.

[16]   Should Plaintiffs file an amended complaint consistent with this Memorandum Opinion and Order, Defendants, at that juncture, may file a new motion to dismiss relating to any potential arguments or defenses, including those related to monetary damages against them in their individual capacities.

their conditions of confinement[17] are dismissed as moot because they are no longer under Defendants' custody at HRYCI.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) ("But when he was released from prison, the request for an injunction became moot because he is unlikely to suffer any more harm from the bus driver or transportation crew." (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983))).

Defendants also argue that injunctive relief is moot because there is no longer an ongoing state of emergency[18] that would require following CDC guidelines.  D.I. 541 at 11.  Although Defendants cite to no authority (binding or persuasive) to support this argument in their opening brief, *see* D.I. 541 at 11, they cite to *Crichlow v. Del. Dep't of Corr.*, No. 22-272-RGA, 2023 WL 5000137 (D. Del. Aug. 4, 2023), in their reply brief, *see* D.I. 554 at 3 & n.1 ("*Crichlow* was issued after Defendants filed their Opening Brief.").  In *Crichlow*, the district court held that a plaintiff's sought after injunctive relief "in the form of preventative measures" against COVID-19 at a *different* Delaware correctional center (i.e., not HRYCI) was moot based on the CDC's "current less rigorous guidance" *and* "previous decisions" concluding that DOC's and the *different* Delaware correctional center's "responses to COVID-19 were not deliberately indifferent."  *Crichlow*, 2023 WL 5000137, at *2 (first citing *Guidance on Management of*

---

[17]    The Court concludes that recently released or transferred Plaintiffs may still have justiciable monetary damages claims. *See, e.g.*, *Mincy v. Governor of Pennsylvania*, No. 21-3263, 2022 WL 4115485, at *1 (3d Cir. Sept. 9, 2022) (nonprecedential) ("Because [the former inmate] is no longer confined at [the state correctional institution], his claims for injunctive and declaratory relief related to his conditions of confinement are moot. . . .  His damages claims, however, are still justiciable." (citing *Sutton v. Rasheed*, 323 F.3d 236, 248–49 (3d Cir. 2003))).

[18]    There was a declared pandemic when Plaintiffs filed their Amended Complaint, *see* D.I. 519 ¶ 21 ("The world was, *and still is*, in the midst of a global COVID-19 pandemic." (emphasis added)), which is no longer the case, *see* D.I. 541 at 9 ("On April 10, 2023, President Joseph R. Biden, Jr. signed H.J. Res. 7, 118th Cong. (2023–24), a joint resolution of Congress, which declared the end of the national emergency caused by the COVID-19 pandemic and declared by then-President Donald J. Trump on March 13, 2020." (citing H.R.J. Res. 7, 118th Cong. (2023), *available at* https://www.congress.gov/118/bills/hjres7/BILLS-118hjres7enr.pdf))).

*COVID-19 in Homeless Service Sites and in Correctional and Detention Facilities*, CDC (last updated May 11, 2023), *available at* https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html; then citing *Gibbs I*, 2022 WL 3681327, at *4, and *Brown*, 2021 WL 7209444, at *2–3).   Even Defendants recognize that "Plaintiffs' allegations concern DOC's response to the COVID-19 pandemic *at HRYCI* and request injunctive relief specific to HRYCI."   D.I. 554 at 2 (citing D.I. 519 at 22–23).

As the Court dismisses without prejudice Plaintiffs' Eighth Amendment claim (Count Two) because Plaintiffs fail to plausibly plead each Defendants' personal involvement in the alleged constitutional violation according to Section 1983 (i.e., not on the basis of whether Defendants' response to COVID-19 at HRYCI was deliberately indifferent under the Eighth Amendment),[19] *see infra* Section III.D, the Court dismisses without prejudice Plaintiffs' request for injunctive relief for *current* HRYCI inmates,[20] *see Gibbs I*, 2022 WL 3681327, at *2 ("When

---

[19]    Although Defendants contend that "[t]his Court has previously found DOC's response constitutional," D.I. 541 at 12 (first citing *Gibbs I*, 2022 WL 3681327, at *3–4; then citing *Brown*, 2021 WL 7209444, at *2–3), the Court is unaware of any similar decisions relating to Defendants' response at HRYCI, *see Gibbs I*, 2022 WL 3681327, at *1 (relating to Delaware's Sussex Correctional Institute); *Brown*, 2021 WL 7209444, at *1 (relating to James T. Vaughn Correctional Center in Smyrna, Delaware).

Here, should Plaintiffs amend their operative complaint and Defendants once more move to dismiss, the Parties should consider the application of *Crichlow*, *Gibbs I* as well as *Gibbs II*, and *Brown* in light of: (1) the end to the ongoing state of emergency, D.I. 541 at 11; (2) that there is supposedly no requirement to even follow CDC guidelines, D.I. 541 at 12 (citing *Valentine v. Collier*, 978 F.3d 154, 164 (5th Cir. 2020) ("The Eighth Amendment does not enact the CDC guidelines.")); and (3) that Defendants contend that "DOC's measures are also in accordance with CDC guidelines" without mention of their adoption at HRYCI, *see* D.I. 541 at 12.   Further, the Parties should direct this Court's attention to any cases where DOC's or Defendants' responses at HRYCI were determined not to be deliberately indifferent.

[20]    The Court does not reach Defendants' other arguments, including (1) "Plaintiffs have also failed to allege how Defendants who are former DOC employees can institute such injunctive relief or sufficiently plead why 'proper nutrition' is part of their requested relief," D.I. 541 at 11 (citing D.I. 519 at 23), or (2) that Plaintiffs' injunctive relief "requests the Court act as correctional facility officials, and ignores the practical and security realities of correctional facilities," D.I. 541 at 10

sued for injunctions, state officials count as persons under § 1983.  So I turn to the merits." (internal citation omitted)).

### C. Counts One and Three fail to state a claim as a matter of law because the Fifth Amendment does not apply to state actors like Defendants and there is no private right of action under Article I, Section 11 of the Delaware Constitution.

Count One in the Amended Complaint alleges that Defendants violated Plaintiffs' Fifth Amendment constitutional rights, "which guarantees detainees the right to be free from punitive conditions of confinement, risk from substantial risk of danger to health and safety within the jail, and cruel and unusual punishment."   D.I. 519 ¶ 66; *see generally* D.I. 519 ¶¶ 65–73 (noting allegations for "Count One[:] United States Constitution, Fifth Amendment" (capitalization normalized)).  Defendants move to dismiss Count One under Rule 12(b)(6), arguing that it fails as a matter of law: (1) "because the Fifth Amendment provides specific trial rights, not conditions of confinement rights," D.I. 541 at 16 (citing U.S. Const. amend. V), and (2) because "even if Plaintiffs intended . . . to allege a claim of inadequate medical care for pretrial detainees, the Fifth Amendment does not apply to state actors," D.I. 541 at 16 (citing *Montgomery v. Ray*, 145 F. App'x 738, 739 (3d Cir. 2005)).

Defendants' first argument misses the mark if any Plaintiffs are pre-trial detainees, *see* D.I. 549 at 13 (collecting cases), because a "claim involving inadequate medical treatment of a federal pretrial detainee is analyzed pursuant to the Due Process Clause of the Fifth Amendment,"

---

(capitalization normalized); *see also* D.I. 541 at 13–14.  Defendants may reassert these arguments; however, the Court acknowledges that Defendants use no supporting authority for the former and appear to use only persuasive authority for the latter, *see* D.I. 541 at 10–11, 13–14, and Plaintiffs present no additional authority at all for either argument, *see* D.I. 549 at 7.  Should Plaintiffs replead these allegations, they should review the plausibility standards, *see supra* Section II, when considering Defendants' contentions; for example, that Plaintiffs "simply state that 'proper nutrition' is necessary to 'best combat a COVID-19 infection' without defining what 'proper nutrition' is or supportive factual averments for such a general claim," D.I. 554 at 5 (citing D.I. 549 at 7).

*Ray*, 145 F. App'x at 739 (nonprecedential); *see also Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) (acknowledging that the "practice of confining two inmates in a cell intended and designed for one" was a confinement condition that implicated federal pre-trial detainees' due process rights[21] under the Fifth Amendment (citing *Bell v. Wolfish*, 441 U.S. 520, 530 (1979))). On the other hand, Defendants' second argument succeeds because the Fifth Amendment does not apply to state actors like Defendants. *See, e.g., Nemeth v. Off. of Clerk of Superior Ct. of N.J.*, 837 F. App'x 924, 929 n.5 (3d Cir. 2020) (nonprecedential) (per curiam) ("[B]ecause all of the defendants named by [the plaintiff] were state and private officials . . . , the [d]istrict [c]ourt properly concluded that [the plaintiff] cannot pursue a Fifth Amendment claim against any defendant, as the Due Process Clause under the Fifth Amendment protects against federal governmental actions, not state actions."); *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n.11 (3d Cir. 2005) ("In a due process claim brought under the Fifth Amendment, the 'State' in the state action analysis is the federal government."). Thus, the Court dismisses Count One[22] with prejudice

---

[21]     Named Plaintiffs do not address whether they are either convicted inmates or pre-trial detainees in their Amended Complaint. *See generally* D.I. 519. The Fifth Amendment does not apply to convicted inmates. *See Hubbard*, 399 F.3d at 166 ("*Bell v. Wolfish* which, as we have explained, distinguishes between pretrial detainees' protection from 'punishment' under the Fourteenth Amendment, and convicted inmates' protection from punishment that is 'cruel and unusual' under the Eighth Amendment."). To the extent that named Plaintiffs are convicted inmates, their Fifth Amendment claims are dismissed with prejudice.

[22]     Plaintiffs argue that "[t]he Third Circuit has held that the Due Process Clause of the Fifth and Fourteenth Amendments is properly applied to an inmate's challenge to the conditions of their confinement brought against individual defendants." D.I. 549 at 13 (citing *Hubbard*, 399 F.3d at 158). To the extent that named Plaintiffs are state, and not federal, pre-trial detainees, however, their Fifth Amendment claims are dismissed with prejudice. *See Hubbard*, 399 F.3d at 158 n.13 ("The Fifth Amendment Due Process Clause was implicated in *Bell* because the plaintiffs were federal pre-trial detainees. Inasmuch as we are here concerned with state pre-trial detainees, any applicable constraints must arise from the Due Process Clause of the Fourteenth Amendment."). Named Plaintiffs briefed the Court that Count One relates to the Fifth Amendment (not Fourteenth Amendment), *see* D.I. 519 ¶¶ 65–73 (noting allegations for "Count One[:] United States Constitution, Fifth Amendment" (capitalization normalized)); *see also* D.I. 549 at 13–14, and did

under Rule 12(b)(6); however, Plaintiffs may move for leave to amend their operative complaint to allege a Fourteenth Amendment claim for a subclass of Plaintiffs who are state pre-trial detainees.[23]  *See* D.I. 519 at 2 (noting that Plaintiffs bring their Amended Complaint against Defendants "for violations of their constitutionally protected rights under the Fifth, Eighth, and *Fourteenth* Amendments" (emphasis added)).

Count Three in the Amended Complaint alleges that Defendants violated Plaintiffs' State Constitutional rights under Article I, Section 11, *see generally* D.I. 519 ¶¶ 79–84 (noting allegations for "Count Three[:] Delaware Constitution, Article [I], Section 11" (capitalization normalized)), which states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted; and in the construction of jails a proper regard shall be had to the health of prisoners," Del. Const. art. I, § 11.  Under Rule 12(b)(6), Defendants move to dismiss Count Three, contending that it fails as a matter of law because there is no independent cause of action under Article I, Section 11, and that federal and state courts in Delaware have held that there is no private right of action under this provision.  *See* D.I. 541 at 16–17 (collecting cases).  The Court agrees.  For example, in *Winter v. Richman*, No. 17-1322-LPS, 2020 WL 6940760 (D. Del.

---

not indicate that they are federal pre-trial detainees when they amended their original complaint, *see generally* D.I. 519.  Should Plaintiffs include federal pre-trial detainees, they may inform the Court of that fact and move for reargument.  *See* D. Del. LR 7.1.5.

[23]     Should Plaintiffs move for leave to amend their operative complaint consistent with this Memorandum Opinion and Order, they should explicitly designate each named Plaintiffs' status (e.g., state pre-trial detainee, convicted inmate, or no longer under HRYCI's custody (i.e., released (on what date) or transferred (on what date and where to))).  *See Ginyard v. Del-Prete*, No. 22-3213, 2023 WL 3967906, at *1 n.1 (3d Cir. June 13, 2023) ("Deliberate indifference claims are typically brought under the Eighth Amendment, but, when the claimant is a pretrial detainee, such claims are raised pursuant to the Fourteenth Amendment's due process clause." (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003))).

Nov. 25, 2020), the district court dismissed the plaintiff's Article I, Section 11 claims,[24] when acknowledging that "[t]he Delaware state courts have not recognized a private right of action under this Delaware Constitution provision," *id.* at *2, and when predicting[25] that the Delaware state courts would decline to do so, *id.* at *3.  Accordingly, the Court concludes the same here[26] and dismisses with prejudice under Rule 12(b)(6) the Amended Complaint's Count Three.

### D.  Count Two is dismissed without prejudice, as Plaintiffs fail to plausibly plead each Defendant's personal involvement in a 42 U.S.C. § 1983 action.

Count Two in the Amended Complaint alleges that Defendants violated Plaintiffs' Eighth Amendment constitutional rights, "which guarantees detainees the right to be free from punitive conditions of confinement, risk from substantial risk of danger to health and safety within the jail, and cruel and unusual punishment."  D.I. 519 ¶ 75; *see also* D.I. 519 ¶¶ 74–78 (noting allegations for "Count Two[:] United States Constitution, Eighth Amendment" (capitalization normalized)).

---

[24]    *See Winter*, 2020 WL 6940760, at *2 ("The state law claims are based on Article I[,] Section 11 of the Delaware Constitution.  This provision prohibits infliction of cruel punishments and requires that in the construction of jails a proper regard shall be had for the health of prisoners[.]").

[25]    *See Winter*, 2020 WL 6940760, at *3 (concluding that Article I, Section 11 "does not set forth any 'requirements for bringing such a cause of action, could impose huge financial burdens on municipal, local, and state government entities by opening them up to lawsuits for damages which lack defined boundaries,'" and that the Delaware State Legislature is best suited to create this new cause of action (quoting *Schueller v. Cordrey*, No. N14C-10-201 EMD, 2017 WL 568344, at *2 (Del. Super. Ct. Feb. 13, 2017))); *see also Rodriguez v. Cahall*, No. N20C-01-201 FJJ, 2023 WL 569358, at *5–6 & n.36 (Del. Super. Ct. Jan. 27, 2023) (noting that the plaintiff alleged the defendants violated "his right to be free from cruel and unusual punishment under Article I, Section 11," and concluding that Delaware law does not recognize a private cause of action for the alleged constitutional violation (citing *Winter*, 2020 WL 6940760)).

[26]    "[U]nlike *Bivens*, there is no state statute similar to section 1983 of the Civil Rights Act that already exists to define the scope of this new cause of action and its limits," *Winter*, 2020 WL 6940760, at *3 (quoting *Schueller*, 2017 WL 568344, at *2), and Plaintiffs set forth an Eighth Amendment claim (Count Two) that is an available alternative remedy here, *see id.*

Plaintiffs insist that Defendants were deliberately indifferent[27] by failing to mitigate the risk of COVID-19 spread at HRYCI and to "the risks faced by inmates in their custody, despite knowledge of the harm and what it would take to correct it[.]" D.I. 519 ¶¶ 76–77. Defendants move to dismiss Count Two because Plaintiffs fail to plausibly plead how each individual Defendant was personally involved under 42 U.S.C. § 1983.[28] D.I. 541 at 17–20. "Section 1983 does not, by its own terms,

---

[27]     The Court does not reach Defendants' argument that Plaintiffs fail to state an Eighth Amendment claim, where Defendants were deliberately indifferent to either the conditions of confinement or Plaintiffs' health, *see* D.I. 541 at 21–24, because Plaintiffs have not plausibly pleaded each Defendants' personal involvement, which is required for a Section 1983 action, D.I. 541 at 17–20.

     Under the Eighth Amendment, a plaintiff must allege a defendant's deliberate indifference for both "a prison-conditions claim (sometimes called a 'conditions-of-confinement claim') and also as an inadequate-medical-care claim (sometimes called a 'deliberate-indifference claim')." *Wholaver v. Wetzel*, No. 22-492, 2022 WL 2052642, at *2 (E.D. Pa. June 7, 2022) [hereinafter *Wholaver I*] (citing *Wilson v. Seiter*, 501 U.S. 294, 297–99, 304 (1991), *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), and *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017)), *aff'd sub nom. Wholaver v. Sorber*, No. 22-3190, 2023 WL 7410423 (3d Cir. Nov. 9, 2023) [hereinafter *Wholaver II*] (nonprecedential) (per curiam); *see also* D.I. 541 at 17 (collecting cases). For a prison-conditions claim, the Third Circuit provides:

> To state an Eighth Amendment claim, a plaintiff must allege that he was incarcerated under conditions imposing a substantial risk of serious harm, and that the defendants were deliberately indifferent to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020). Deliberate indifference requires that a defendant knew of and disregarded an excessive risk to inmate health and safety. *Farmer*, 511 U.S. at 837. Prison officials who knew of a substantial risk of harm are not liable "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

*Wholaver II*, 2023 WL 7410423, at *1. Also, "[t]o succeed on an Eighth Amendment claim for inadequate medical care, 'a plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to his or her medical needs and (2) an objective showing that those needs were serious.'" *Muata v. Hicks*, No. 21-3210, 2022 WL 2526692, at *1 (3d Cir. July 7, 2022) (nonprecedential) (per curiam) (quoting *Pearson*, 850 F.3d at 534 (cleaned up)).

[28]     Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

create substantive rights; it provides only remedies for deprivations of rights[29] established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  For a complaint under Section 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  "It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000); *see also Wholaver I*, 2022 WL 2052642, at *2 ("A defendant may not be held liable for the unconstitutional conduct of his or her subordinates under a theory of *respondeat superior*.").  In other words, "[l]iability in a 42 U.S.C. § 1983 action is personal in nature and, to be liable, a defendant must have been personally involved in the wrongful conduct."  *Dennis v. Boulos*, No. 21-655-GBW, 2023 WL 4488981, at *5 (D. Del. July 12, 2023) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988)).

---

equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

[29]   Although "Federal and state regulations such as DOC policies do not give rise to a liberty interest[,]" *George X v. DeMatteis*, No. 21-499 (VAC), 2022 WL 2072870, at *3 (D. Del. June 9, 2022), *dismissed*, No. 22-2254, 2023 WL 4458321 (3d Cir. Jan. 12, 2023), allegations "that the defendant prison officials did not even try to comply with DOC and CDC guidance" may survive the motion-to-dismiss stage, *White v. Wetzel*, No. 21-2654, 2022 WL 3273807, at *2 (3d Cir. Aug. 11, 2022) (nonprecedential) (per curiam) (concluding that the plaintiff "set forth sufficient facts to survive the defendants' motion to dismiss," and acknowledging that "we cannot say that these facts do not raise an inference of deliberate indifference to a concededly serious risk[,]" after considering allegations relating to the individual defendants).

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. Simply put, Plaintiffs fail to allege Defendants' individual acts to indicate personal involvement, but instead plead that they acted together when supposedly failing to respond to COVID-19 at HRYCI. *See generally* D.I. 519 ¶¶ 35–59; *see also Gibbs I*, 2022 WL 3681327, at *2 ("When sued for injunctions, state officials count as persons under § 1983. . . . To win [on the merits], the prisoners must plausibly plead that each official was deliberately indifferent *and that each was personally involved in that constitutional violation*. The only official who checks both boxes is [the w]arden . . . ." (internal citations omitted and emphasis added)), *appeal dismissed sub nom. Gibbs II*, 2022 WL 19039032, at *1 (dismissing appeal for failure to timely prosecute).

Here, Plaintiffs do not plausibly plead how Defendants are personally involved, when they repeat the same conclusory allegation that Defendants had "authority to, and did, *act in concert*" with each other "in developing, implementing, and carrying out policies and procedures for HRYCI and in failing to develop, implement, or carry out policies designed to protect the health and safety of inmates incarcerated at HRYCI from risk of infection of COVID-19."[30] D.I. 519 ¶¶ 16–20 (emphasis added); *see also Wholaver I*, 2022 WL 2052642, at *2 (finding that the

---

[30]   The Court does not analyze the Eighth Amendment's deliberate indifference standard here; however, should Plaintiffs expect to plead the same facts, they will need to reconcile them with *Mincy v. Governor of Pennsylvania*, No. 21-3263, 2022 WL 4115485, at *2 (3d Cir. Sept. 9, 2022) (nonprecedential) (per curiam):

> To the extent [the former prisoner] avers that officials and staff at [the prison] failed to follow all of the [d]epartment of [c]orrections' policies, he does not allege sufficient facts to conclude that these defendants were deliberately indifferent to the risk of harm. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (stating that the failure to eliminate all risk of contracting COVID-19 in immigration detention did not establish deliberate indifference).

*Mincy*, 2022 WL 4115485, at *2.

complaint "does not allege the personal involvement of any named defendant and relies only on the defendants' supervisory powers over their employees," acknowledging that "defendants cannot be held liable under a theory of *respondeat superior*," and concluding that where the "claim seems to be based on these officials' supervisory powers and their ability to implement certain COVID-19 protocols affecting the facility at large," the plaintiff failed to state a cognizable Section 1983 claim), *aff'd sub nom. Wholaver II*, 2023 WL 7410423, at *3 (listing allegations insufficient to allege that the defendants had personal involvement, including that the defendants had daily meetings "to discuss COVID-19, including mitigation efforts and who was at high risk," "had some sort of knowledge regarding 'what was happening on' [the plaintiff's] housing block," and "knew that the two housing unit employees were COVID-19 positive and endangered the high-risk inmates in his housing unit by not immediately instituting COVID-19 protocols," as well as that the state prison "forced staff members to come to work knowing that they had COVID-19 and were ill").

The Court concludes that Plaintiffs' Amended Complaint fails to "meet the pleading requirements of *Iqbal* and *Twombly*," so it will be dismissed according to this Memorandum Opinion and Order; however, Plaintiffs "may be able to cure the pleading defects," so they may move for leave to file a second amended complaint. *George X v. Carney*, No. 21-499-LPS, 2021 WL 7209518, at *3 (D. Del. Dec. 7, 2021); *see also Dennis*, 2023 WL 4488981, at *5 ("Allegations of personal involvement must also be sufficiently pled to suggest a plausible claim for relief." (citing *Iqbal*, 556 U.S. at 678)).

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Defendants' Motion to Dismiss (D.I. 540) is **GRANTED**:

1. Count One is **DISMISSED WITH PREJUDICE**; however, should Plaintiffs move for leave to amend their operative complaint, they may designate Count One as a Fourteenth Amendment (instead of a Fifth Amendment) claim;

2. Count Two is **DISMISSED WITHOUT PREJUDICE**;

3. Count Three is **DISMISSED WITH PREJUDICE**;

4. Plaintiffs' request for:

   a. Injunctive relief relating to their conditions of confinement:

      i. Is **DISMISSED AS MOOT** for Plaintiffs who have been recently released or transferred from HRYCI;

      ii. Is **DISMISSED WITHOUT PREJUDICE** for Plaintiffs who are current inmates at HRYCI;

   b. Injunctive relief based on state law, as well as monetary damages against Defendants in their official capacities are **DISMISSED WITH PREJUDICE**;

   c. Injunctive relief based on federal law, as well as monetary damages against Defendants in their individual capacities are **DISMISSED WITHOUT PREJUDICE**; and

5. Any remaining claims are **DISMISSED WITHOUT PREJUDICE**.

Plaintiffs may file a motion for leave to amend their operative complaint, attaching a proposed Second Amended Complaint, within thirty (30) days from the date of this Memorandum Opinion and Order or from the filing of any appropriate motion for extension of time.  Any dismissals without prejudice shall convert to dismissals with prejudice on the merits, in the absence of such a motion for leave and proposed Second Amended Complaint within the specified timeframe.

**SO ORDERED.**