## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL EVANS, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>DOC COMMISSIONER CLAIRE DEMATTEIS, *et al.*, )<br><br>Defendants. ) | Civil Action No.  1:20-cv-01663-EJW<br>**CONSOLIDATED**<br><br>**MEMORANDUM OPINION AND ORDER** |

Presently before the Court is Plaintiffs' Motion for Leave to File Second Amended Complaint.  D.I. #564.  Defendant responded in opposition (D.I. #570) to which Plaintiffs replied (D.I. #572).  The Court held oral argument on this Motion on October 24, 2025.  Court **DENIES** Plaintiffs' motion.  The Court **DISMISSES WITH PREJUDICE** Plaintiff's claims.

## I.    INTRODUCTION

This case is brought by a class of nearly a hundred individuals ("Plaintiffs"), either currently or formerly confined at the Howard R. Young Correctional Institution ("HRYCI"), against Delaware state officials ("Defendants") related to the Delaware Department of Corrections ("DOC") or HRYCI.[1]  Currently pending before the Court is Plaintiffs' Motion for Leave, D.I. 564 ("Motion for Leave"), to file the proposed Second Amended Complaint, D.I. 564-2 (hereinafter "SAC").  Plaintiffs claim that Defendants violated the United States Constitution, Eighth Amendment through HRYCI's response to the COVID-19 pandemic and failure to protect

---

[1] Named Defendants are: (1) Claire DeMatteis, current Secretary of the Delaware Department of Human Resources and former DOC Commissioner; (2) Monroe B. Hudson, Jr., current DOC Commissioner; (3) Kolawole Akinbayo, HRYCI's current Warden; (4) Christopher Kearney, HRYCI's current Deputy Warden; and (5) Karl A. Sturgill, HRYCI's former Deputy Warden. D.I. 564-2 ¶¶ 16–20.

Plaintiffs from the pandemic.[2]  Defendants oppose the Motion for Leave and have moved to dismiss Plaintiffs' claims.  D.I. 570 ("Answering Brief in Opposition").  Plaintiffs have filed a reply brief in support of their motion.  D.I. 572 ("Reply Brief").  For the reasons discussed below, the Court will DENY Plaintiffs' motion and DISMISS this case WITH PREJUDICE.[3]

## II.    FACTUAL BACKGROUND & PROCEDURAL HISTORY[4]

In 2020, the COVID-19 pandemic reached the United States.  SAC ¶ 1.  The inmates confined at HRYCI were "particularly susceptible" to COVID-19 because they lived "in close proximity to one another," and thus they were "completely reliant" upon DOC for safety measures designed to stop the spread of COVID-19.  *Id.* ¶¶ 1–3.  Plaintiffs claim that the Defendants did "almost nothing to protect Plaintiffs and other inmates" at HRYCI from the COVID-19 pandemic beyond the suspension of inmate visitation in March 2020.  *Id.* ¶¶ 3, 16–20, 33.

Plaintiffs list multiple steps that Defendants either failed to take or actively took that exposed Plaintiffs to the dangers of COVID-19.  First, Defendants failed to provide regular COVID-19 testing to inmates, correctional officers, or other staff members with known exposure to COVID-19.  *Id.* ¶¶ 36–37, 44.  Defendants did, however, provide testing by individual request or "in response to known cases of COVID-19 in the inmate population and amongst the correctional officers staffing HRYCI," and to inmates who displayed symptoms of COVID-19.

---

[2] The Proposed Second Amended Complaint raises One Cause of Action: United States Constitution: Eighth Amendment.

[3] This Court consolidated this lead case with a member case: *Smith v. Carney*, No. 21-cv-387, on November 4, 2021.  ECF No. 479.  This Memorandum Opinion and Order applies equally to the consolidated member case.

[4] To evaluate whether Plaintiffs state a claim upon which relief may be granted, this Court "accept[s] all factual allegations" in the Proposed Second Amended Complaint, which was filed as an exhibit to the Motion for Leave, and is available at D.I. 564-2, "as true and view[s] them in the light most favorable to the plaintiff."  *Umland v. PLANCO Fin. Servs. Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

*Id.* ¶ 39–40.  Second, Defendants failed to implement social distancing policies, and Plaintiffs were "routinely forced to break social distancing rules" to work, use common areas, and "engage in activities required by Defendants."  *Id.* ¶¶ 48–51.  Third, Defendants failed to provide the inmates with masks or any other protective equipment "for many months," and responded to inmates making and wearing homemade masks by enacting and enforcing regulations banning inmates from wearing homemade masks.  *Id.* ¶¶ 54–55.  Two months after the Delaware Governor issued an updated mask mandate in May 2020, only 250 out of 1500 inmates at HRYCI had been issued masks.  *Id.* ¶ 56.  However, despite Defendants eventually supplying inmates with paper masks, they did not require inmates to wear them, and the inmates often did not.  *Id.* ¶¶ 54, 57–58.  Fourth, Defendants failed to provide hand sanitizer or other cleaning equipment to Plaintiffs.  *Id.* ¶¶ 61–63.  Finally, Defendants, particularly Defendant Claire DeMatteis, former Commissioner of the DOC, made multiple public statements stating that the rates of positive COVID-19 testing results at HRYCI were low, and that providing regular COVID-19 testing and masks to inmates was unnecessary.  *Id.* ¶¶ 40, 42, 55.

On December 8, 2020, Plaintiffs filed their initial complaint as a class action.[5]  (D.I. 1).  Plaintiffs' proposed class is defined as "all persons confined at HRYCI in 2020, 2021, and 2022, including as subclasses: (i) persons exposed to and formally diagnosed with COVID-19 while detained at HRYCI, and (ii) persons exposed to COVID-19 while detained at HRYCI that showed symptoms of COVID-19."  SAC ¶ 68.  On November 14, 2022, Plaintiffs filed their first amended complaint ("FAC").  (D.I. 519).  On April 30, 2024, this Court addressed the FAC in a

---

[5] The SAC establishes the requirements for class certification under Federal Rule of Civil Procedure 23(a).  SAC ¶¶ 69–72.  Defendants do not contest the class certification.  *See generally* D.I. 570.

Memorandum Opinion and Order.  (*Evans v. DeMatteis*, No. 20-cv-1663, D.I. 555, 2024 WL

1885554 (D. Del. Apr. 30, 2024)) (hereinafter *Apr. 2024 Order*).[6]

The *Apr. 2024 Order* granted Defendants' Motion to Dismiss (D.I. 540) with discussion

that is well known to the parties and this Court, and this Court will only recite here what was

ordered, adjudged, and decreed in the *Apr. 2024 Order*:

> 1. Count One is **DISMISSED WITH PREJUDICE**; however, should Plaintiffs
> move for leave to amend their operative complaint, they may designate Count One
> as a Fourteenth Amendment (instead of a Fifth Amendment) claim;
> 2. Count Two is **DISMISSED WITHOUT PREJUDICE**;
> 3. Count Three is **DISMISSED WITH PREJUDICE**;
> 4. Plaintiffs' request for:
>> a. Injunctive relief relating to their conditions of confinement:
>>> i. Is **DISMISSED AS MOOT** for Plaintiffs who have been recently
>>> released or transferred from HRYCI;
>>> ii. Is **DISMISSED WITHOUT PREJUDICE** for Plaintiffs who
>>> are current inmates at HRYCI;
>> b. Injunctive relief based on state law, as well as monetary damages against
>> Defendants in their official capacities are **DISMISSED WITH
>> PREJUDICE**;
>> c. Injunctive relief based on federal law, as well as monetary damages
>> against Defendants in their individual capacities are **DISMISSED
>> WITHOUT PREJUDICE**; and
> 5. Any remaining claims are **DISMISSED WITHOUT PREJUDICE**.
>
> Plaintiffs may file a motion for leave to amend their operative complaint, attaching
> a proposed Second Amended Complaint, within thirty (30) days from the date of
> this Memorandum Opinion and Order or from the filing of any appropriate motion
> for extension of time. Any dismissals without prejudice shall convert to dismissals
> with prejudice on the merits, in the absence of such a motion for leave and proposed
> Second Amended Complaint within the specified timeframe.

*Apr. 2024 Order*, at *13.

Plaintiffs filed Motion for Leave and proposed SAC on September 13, 2024.  (D.I. 564).  On

November 20, 2024, Defendants filed their Answering Brief in Opposition.  (D.I. 570).  On

---

[6] Unless otherwise indicated, pagination for pincites to the *Apr. 2024 Order* refers to the
Westlaw publication, 2024 WL 1885554.

December 6, 2024, Plaintiffs filed their Reply Brief. (D.I. 572). The Court **DENIES** Plaintiffs'

Motion for Leave. (D.I. 564).

## III.    LEGAL STANDARD

This Court should "freely give leave [to amend a pleading] when justice so requires." Fed.

R. Civ. P. 15(a)(2). The Third Circuit has adopted a "policy favoring liberal amendment of

pleadings." *Dole v. Arco Chemical Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990). This liberal policy

"is not, however, unbounded." *Id.* at 487. If there is a showing of "undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of the allowance of the

amendment, futility of amendment, etc.," the court should deny leave to amend. *Duffy v. Kent

Cnty. Levy Ct.*, No. 09-cv-198, 2013 WL 3480269 at *1 (D. Del. July 5, 2013) (quoting *Foman v.

Davis*, 371 U.S. 178, 182 (1962).

Being futile to amend means that "the complaint, as amended, would fail to state a claim

upon which relief could be granted . . . [under] the same standard of legal sufficiency as applies

under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.

1997). Where a motion for leave to amend has been denied as futile, courts in this Circuit have

simultaneously granted motions to dismiss by the opposite party. *See, e.g.*, *Kanter v. Barella*,

489 F.3d 170, 175, 182 (3d Cir. 2007) (affirming the District Court denying plaintiffs' motion for

leave to amend her complaint because amendment would be futile and simultaneously granting

defendants' motion to dismiss), *overruled on other grounds by In re Cognizant Tech. Sols. Corp.

Derivative Litig.*, 101 F.4th 250 (3d Cir. 2024); *see also Gold v. Ford Motor Co.*, 937 F.Supp.2d

526, 528–29 (D. Del. Apr. 9, 2013) (holding that when the plaintiff failed to adequately plead

crucial elements of the claim and when amendment was futile, denying plaintiff's motion for leave

to amend and granting the defendants' motion to dismiss was proper).  A court's dismissal of a case is warranted when the complaint "fails to state a claim upon which relief may be granted." *Brown v. May*, No. 21-cv-365, 2021 WL 7209444 at *1 (D. Del. Dec. 17, 2021); *see also Muata v. Hicks*, No. 21-cv-3210, 2022 WL 2526692 at *2 (3d. Cir. 2022) (holding that "the District Court properly dismissed" claims that "plaintiffs do not adequately allege").

To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In reviewing a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded allegations as true, viewing them in the light most favorable to the plaintiff.  *Umland,* 542 F.3d at 64 (quoting *Buck*, 452 F.3d at 260).  However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The factual allegations require "more than labels and conclusions," and "must be enough to raise a right to relief above the speculative level" if true.  *Twombly*, 550 U.S. at 555.

IV.    **DISCUSSION**

   **A.  The Standard to Establish a Claim under 42 U.S.C. § 1983**

"To prevail on a § 1983 claim, a plaintiff must show that a person (or persons), acting under color of law, deprived him of a constitutional right." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020).  Plaintiffs here claim that they were deprived of their Eighth Amendment rights.  SAC ¶ 74.  "To state an Eighth Amendment claim, a plaintiff must allege that he was incarcerated

under conditions imposing a substantial risk of serious harm, and that the defendants were deliberately indifferent to that risk." *Wholaver v. Sorber*, No. 22-cv-3190, 2023 WL 7410423 at *1 (3d Cir. 2023) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).[7]  To establish that Defendants were deliberately indifferent, Plaintiffs must allege sufficient facts to demonstrate that Defendants (1) knew of, and (2) disregarded, an "excessive risk to inmate health and safety."[8]  *Id.* at *1.  To establish whether Defendants knew of the risk, Plaintiffs must establish "actual[,] . . . subjective knowledge" by evidence that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [that they] must also [have drawn] the inference." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001) (quoting *Farmer*, 511 U.S. at 837).  "It is not enough merely to find that a reasonable person would have known, or that the defendant should have known[;]" actual, subjective knowledge must be established.  *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016) (quoting *Farmer*, 511 U.S. at 843 n.8).

If a prison official has "responded reasonably" to the substantial risk, "even if the harm ultimately was not averted," they may be free of Eighth Amendment liability.  *Farmer*, 511 U.S. at 844.  In the context of COVID-19, where a facility "has taken concrete steps towards mitigating the medical effects of COVID-19 on a detention facility, a prisoner 'will fall well short of establishing that the [facility and its staff were] deliberately indifferent.'"  *Brown*, 2021 WL 7209444 at *3 (quoting *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330–31 (3d

---

[7] Defendants do not contest Plaintiffs' argument that risk of contracting COVID-19 poses a substantial risk of serious harm.  *See* D.I. 570 at 14.  Other courts in this Circuit have found that risk of contracting COVID-19 is objectively a substantial risk of serious harm.  *E.g.*, *Mincy v. Wetzel*, No. 1:20-cv-717, 2021 WL 5112277 at *3 (M.D. Pa. Nov. 3, 2021) ("COVID-19 clearly presents" an "objectively serious risk to inmate health or safety").
[8] Whether COVID-19 is an "excessive risk to inmate health and safety" is not contested by Defendants.  *See supra* n.6.

Cir. 2020)); *see also Wholaver v. Wetzel*, No. 22-cv-492, 2022 WL 2052642 at *3 (E.D. Pa. June 7, 2022) (holding that where the Pennsylvania Department of Corrections and a Pennsylvania prison "*have* been taking steps to contain COVID-19," a finding of deliberate indifference is not established, and the plaintiff's belief that the defendants "should do more to mitigate the harm of COVID-19 . . . is not enough to state an Eighth Amendment claim")[hereinafter *Wholaver I*], *aff'd sub nom. Wholaver v. Sorber*, No. 22-cv-3190, 2023 WL 7410423 (3d Cir. 2023) [hereinafter *Wholaver II*].

Each individual government defendant must have "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho*, 423 F.3d at 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Plaintiffs can demonstrate personal involvement "through allegations of personal direction or of actual knowledge and acquiescence . . . made with appropriate particularity." *Rode*, 845 F.2d at 1207. It is not enough that an individual objectively should have been involved "simply because of his position." *Evancho*, 423 F.3d at 354. Plaintiffs need to allege specific individual acts, such as "conduct, time, place . . . [or] contemporaneous, personal knowledge . . . and acquiesce[nce]" to sufficiently allege personal involvement. *Id.* at 353.

**B. Previous § 1983 Cases Involving COVID-19 in Prisons**

Several cases over the last few years have dealt with claims by prisoners brought under Section 1983 for violations of Eighth Amendment rights in relation to COVID-19. *E.g.*, *Mincy v. Wetzel*, No. 1:20-cv-717, 2021 WL 5112277 at *3 (M.D. Pa. Nov. 3, 2021) [hereinafter *Mincy I*], *aff'd sub nom. Mincy v. Governor of Pa.*, No. 21-cv-3263, 2022 WL 4115485 (3d Cir. 2022) [hereinafter *Mincy II*]; *Brown*, 2021 WL 7209444; *Wholaver I*, 2022 WL 2052642. All these cases

were dismissed because the plaintiffs failed to state a claim under which relief may have been granted.

In *Mincy*, a prisoner's claims of violation of the Eighth Amendment were dismissed because the plaintiff failed to sufficiently plead deliberate indifference. *Mincy* concerns claims by a prisoner at a Pennsylvania correctional facility that alleged that officials from both the facility and the Pennsylvania Department of Corrections failed to implement sufficient policies to mitigate the spread of COVID-19. *Mincy II*, 2022 WL 4115485 at *2. The plaintiff alleged that the facility had "not implemented mandatory COVID-19 testing for all . . . staff and inmates," did "not require masking or social distancing during showers," and "allow[ed] interactions between cohorts of prisoners that are supposed to be separated." *Mincy I*, 2021 WL 5112277 at *1. These claims were raised under § 1983 for "deliberate indifference in violation of the Eighth Amendment." *Id.* at *2. However, the district court in *Mincy* denied the plaintiff leave to file a second amended complaint and dismissed the case because the plaintiff failed to plead enough particular facts "suggesting that defendants have been deliberately indifferent." *Id.* at *3. Additionally, because of the policies that the defendants had implemented attempting to mitigate the spread of COVID-19—providing inmates with disposable masks, regularly providing materials to inmates to clean their cells, requiring masks for all staff members, and hosting regular town hall meetings to review sanitation guidelines—the court held that defendants were not deliberately indifferent to the risk of COVID-19. *Id.* at *3–4. The Third Circuit court summarily affirmed the District Court's judgment. *Mincy II*, 2022 WL 4115485 at *3.

*Brown* discusses a similar claim to *Mincy*, and this Court dismissed *Brown* based on the steps adopted by the correctional facility to mitigate the spread of COVID-19. At a Delaware correctional facility, a plaintiff alleged an Eighth Amendment violation pursuant to § 1983 by

correctional officers who failed to wear masks during the COVID-19 pandemic. *Brown*, 2021 WL 7209444 at *1. The plaintiff's claims that the defendants were deliberately indifferent to the risk of COVID-19 were dismissed because this Court found that the plaintiff had failed to state a claim. *Id.* at *3. The court held that the defendants "have not acted unreasonably with respect to the threat posed by COVID-19" because they "adopted detailed preventative steps to mitigate the risk to inmates and staff and to control the spread of COVID-19." *Id.* The court in *Brown* chose to take "judicial notice" of the policies adopted on the Department of Corrections' website, *id.* at *3, and concluded that these policies, including the fact that "more than half of all . . . inmates were provided face masks" by June 2020, *id.* at *2, and that by April 2020, "face masks [were] mandatory for all correctional officers," were enough to conclude that the defendants had not "acted unreasonably by 'doing their best,'" *id.* at *3.

     *Wholaver* discusses similar claims of violation of the Eighth Amendment stemming from the COVID-19 pandemic, but those claims were dismissed because of the steps defendants had already taken and because of the failure to allege actual knowledge. Brought by an inmate imprisoned at a correctional institute in Pennsylvania, the plaintiff in *Wholaver* alleged that he contracted COVID-19 from his "housing block counselor and unit manager," and sought to hold the prison officials responsible for "fail[ing] to properly respond to the known COVID-19 cases of his counselor and his housing block manager." *Wholaver I*, 2022 WL 2052642 at *2. The District Court held that the plaintiff had not "alleged how the defendants he sued . . . had any personal involvement" when he based his claim on "these officials' supervisory powers and their ability to implement certain COVID-19 protocols affecting the facility at large." *Id.* at *2. The Eastern District of Pennsylvania also held that the facility's officials "*have* been taking steps to contain COVID-19 and reduce the risk," such as "suspend[ing] in-person visits" and "increas[ing]

its screening of staff members for positive cases," and therefore the plaintiff failed to allege an Eighth Amendment claim. *Id.* at *3. The court finally held that the plaintiff had "not made any allegation that the [defendants] subjectively knew of and disregarded the risk of COVID-19 broadly or to [the plaintiff] specifically," and found that the plaintiff's complaint was "speculative." *Id.* The Third Circuit affirmed all the District Court's orders. *Wholaver II*, 2023 WL 7410423 at *3.

### C. The Second Amended Complaint Fails to Sufficiently Allege the Personal Involvement of Each Individual Defendant

The proposed SAC fails to sufficiently allege the personal involvement of each individual Defendant, and therefore granting the motion to amend would be futile because the proposed amendments fail to state a claim upon which relief may be granted. *See In re Burlington*, 114 F.3d at 1434 (stating that futility justifies a denial of leave to amend). First, the proposed amendments simply restate what each individual defendant was "responsible for" and what they "had the authority to do." D.I. 564-3 ¶¶ 16–20. These allegations are insufficient to rise to the level of allegations of personal involvement because they merely restate the Defendants' positions and do not allege specific facts. *See Evancho*, 423 F.3d at 353–54 (finding that where the plaintiff fails to allege specific facts, such as "conduct, time, place, . . . [or] contemporaneous, personal knowledge . . . and acquiesce[nce]," and instead only "hypothesizes that [the defendant] may have been somehow involved simply because of his position," a dismissal of the amended complaint was proper). Like in *Wholaver*, merely basing a claim of personal involvement on an official's "supervisory powers" is not enough to allege personal involvement of any individual defendant, as they "cannot be held liable under a theory of *respondeat superior*." *Wholaver I*, 2022 WL 2052642 at *2.

Plaintiffs' citation to *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015), to satisfy its five-factor test for supervisory liability misses the mark. Reply Br. at 3. In *Chavarriaga*, even after establishing a five-factor test for supervisory liability, the court held that the plaintiff's allegations were "insufficient . . . because [she] did not adequately allege facts attributing the denial [of her constitutional rights] to [the defendant prison official]." *Chavarriaga*, 806 F.3d at 229. Not only did the plaintiff "not make specific allegations concerning [the defendant's] duties as a supervisor, or [the defendant's] interactions or communications with correctional officers in general," the plaintiff also sought to "place liability on [the defendant] . . . merely because of her position as a supervisor"—for these reasons, the court affirmed summary judgment in favor of the prison official defendants. *Id.* at 229–30, 235. This is also the case here, as there were also no specific allegations of Defendants' roles or interactions with correctional officers, merely assertions of Defendants' positions within the prison. *See generally* SAC.

Second, Plaintiffs repeat the allegation that Defendants had "authority to, and did, act in concert" with each other in withholding masks and instating other policies, but again, this is too conclusory to allege personal involvement without more. SAC ¶¶ 16–20, 41; *Apr. 2024 Order* at *12.

Finally, Plaintiffs fail to sufficiently support their argument that one of the Defendants' public statements evidences personal involvement. Plaintiffs allege multiple instances of Defendant DeMatteis' public statements: (1) when DeMatteis made "false public statements . . . [of] low rates of positive testing results amongst the inmate population and . . . widespread outbreaks of COVID-19 in HRYCI," (2) when DeMatteis "publicly declared . . . that it was not necessary to test any inmate who had close contact with another inmate who had a confirmed case of COVID-19," (3) when DeMatteis "proclaimed that masks for inmates were 'not necessary,'"

and (4) when DeMatteis stated, two months after the Delaware governor updated the state's mask mandate, that "only 250 out of 1500 inmates at HRYCI had been issued masks."  SAC ¶¶ 40, 42, 55, 56.  However, Plaintiffs' allegations that Defendant DeMatteis made the statements does not rise to the level of demonstrating personal involvement.  *Rode*, 845 F.2d at 1207–08; *see also Dennis v. Boulos*, No. 21-655-GBW, 2023 WL 4488981 at *6 (D. Del. July 12, 2023) (holding that simply claiming that the warden was "in charge of everything" was not enough to allege personal involvement in a Section 1983 action).  Giving press statements is not an action that either "helped create" the conditions or demonstrates that she had the "power to remedy the conditions" beyond her position alone and declined to so act.

Plaintiffs fail to allege specific conduct by any of the Defendants, and therefore their attempts in their Reply Brief to distinguish this case from other cases are unpersuasive.  Reply. Br. at 1–2, 5 (first citing *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (denying leave to amend where plaintiff "failed to make any factual contentions concerning *conduct* by [any of the defendants]") (emphasis added); then citing *Kanter*, 489 F.3d at 181 (3d Cir. 2007) (denying leave to amend because the plaintiff "offered no new facts demonstrating" a specific element of her claim that the district court had found to be lacking); then citing *Evancho*, 423 F.3d at 353–54 (dismissing a § 1983 claim because the plaintiff did not allege any actual facts or specific acts by the defendant that demonstrated his "personal involvement" in the alleged constitutional violation); and then citing *Samuel v. Centene Corp.*, 2024 WL 3552869 at *8 (D. Del. July 26, 2024) (dismissing a § 1983 claim against DOC defendants when the plaintiff alleged "no specific facts showing that the [defendants] expressly directed the deprivation of [the plaintiffs'] constitutional rights or that they maintained a policy or custom which directly caused the constitutional harm")).  Plaintiffs do not allege any instances of specific conduct or

more specific facts demonstrating that Defendants were personally involved in the alleged constitutional violation.

The Plaintiffs' proposed amendments do not sufficiently allege personal involvement; therefore, they fail to cure the deficiencies from the first amended complaint for which they have already been granted leave to amend.  *Apr. 2024 Order*, 2024 WL 1885554 at *12.  Thus, the amendments proposed by the SAC are futile, warranting denial of Plaintiffs' motion for leave to amend.

### D. The Second Amended Complaint Fails to Sufficiently Allege Deliberate Indifference by the Defendants

Plaintiffs also fail to state a claim upon which relief may be granted because they fail to sufficiently allege deliberate indifference by the Defendants.  Plaintiffs claim that Defendants were deliberately indifferent by failing to take sufficient, reasonable actions to mitigate the risk of the spread of COVID-19 to Plaintiffs and other class members at HRYCI, "despite knowledge of the harm and what it would take to correct it," in violation of the Eighth Amendment.  SAC ¶¶ 74–77.  Defendants claim that Plaintiffs have failed to establish that Defendants acted with deliberate indifference regarding COVID-19 because they have failed to allege actual knowledge, and because the measures that Plaintiffs do not dispute Defendants took weigh against a finding of deliberate indifference by Defendants.  *See* D.I. 570 at 13–16.

#### 1. Plaintiffs Do Not Sufficiently Allege Actual Knowledge by the Defendants

Plaintiffs do not allege facts sufficient to demonstrate actual knowledge by any of the Defendants for any of their claims.  For example, Plaintiffs claim that Defendants "acted in concert" by not requiring regular testing of asymptomatic inmates despite alleging that they knew or should have known that the majority of COVID-19 cases among their inmates were

diagnosed while asymptomatic.  SAC ¶¶ 38–43.  However, beyond Defendants' roles,

responsibilities, and the conclusory allegation that they acted in concert, Plaintiffs do not provide

any particular facts to allege that any individual Defendant had actual, subjective knowledge that

Plaintiffs were not getting regularly tested.  *See* SAC ¶¶ 16–20; *see also Rode*, 845 F.2d at 1208

(holding that a claim that a superior had "responsibility for supervising the other defendants"

does not allege actual knowledge).  A claim that Defendants "should have been aware" is

insufficient to demonstrate actual knowledge, so Plaintiffs' claims of what Defendants should

have been aware of are irrelevant.  *See Beers-Capitol*, 256 F.3d at 133. Plaintiffs also allege that

Defendants "knew, or should have known, that correctional officers . . . had a significant

economic incentive to conceal or under-report" COVID-19 symptoms.  SAC ¶ 45.  However,

there are no facts to support that Defendants actually knew about this incentive.  *See generally*

SAC.  Additionally, Plaintiffs' claim that Defendants "should have known" is irrelevant to the

discussion of deliberate indifference.  *Beers-Capitol*, 256 F.3d at 131 (stating that the court must

look to "what the prison official actually knew" to determine deliberate indifference).  Therefore,

Plaintiffs' claims here do not sufficiently allege actual knowledge.

For this reason, Plaintiffs' citation to *Gordon v. Burt*, No. 23-1775, 2024 WL 1842873 (6th

Cir. Apr. 4, 2024), is inapposite.  Reply Br. at 10.  In *Gordon*, the Sixth Circuit court found

deliberate indifference by the defendant based on what a "reasonable prison official would have

understood."  *Gordon*, 2024 WL 1842873 at *3.  By contrast, this Circuit the does not analyze

what a reasonable official would have known, but rather what they actually, subjectively knew.

*See* discussion *supra* Section IV.A.

Plaintiffs allege that Defendants consciously "change[d] housing arrangements by moving

inmates from one pod to another," that Defendants "enforced policies that required Plaintiffs and

other inmates" to work in close proximity with others, and that Defendants "provided no access to hand sanitizer and denied . . . inmates adequate cleaning supplies." SAC ¶¶ 50–51, 61–62. The SAC, however, pleads no particular facts that Defendants had actual knowledge of these transfers or policies, instead relying on conclusory allegations that Defendants "enacted policies," "promulgated and enforced policies," or "provided no access." *Id.* Plaintiffs fail to allege any specific facts demonstrating that any individual Defendant had actual knowledge of the changing housing assignments, or the lack of social distancing, or the failure to provide cleaning supplies to inmates, other than the claims of their positions within the prison and the conclusory statements that they acted or failed to act. *See generally* SAC. Plaintiffs failed to support their allegation with the required, particularly pled facts alleging actual knowledge. *See Reddick v. Hicks*, No. 22-06926 (ZNQ) (RLS), 2025 WL 84336 at *11 (D.N.J. Jan. 14, 2025) (holding that claims of deliberate indifference were insufficiently alleged when inmate plaintiffs failed to allege actual knowledge by prison official defendants, but if plaintiffs alleged that the defendants had "personally administered COVID-19 tests to confirm positive diagnosis, or that they personally witnessed any inmates displaying COVID-19 symptoms," it could have demonstrated that defendants were actually aware of a risk of harm). Thus, a finding of actual knowledge cannot be supported by the facts as pled in the SAC.

Plaintiffs' citation to *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004), is inapposite for two reasons. Reply Br. at 2. First, the court in *J.M.K.* held that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* at 586. Here, however, Plaintiffs have not sufficiently alleged participation or direction of others by any of the individual Defendants beyond

the Defendants' positions alone.   Like *Evancho* and *Wholaver*, identifying the Defendants' positions is not enough to allege personal involvement—more particularized facts are needed.   *See* discussion *supra* Section IV.C.   Plaintiffs also have not sufficiently alleged that any individual Defendant had knowledge of the circumstances.   Second, the court in *J.M.K.* held that "individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"   *J.M.K.*, 372 F.3d at 586.   However, here Plaintiffs have failed to allege the actual knowledge element of deliberate indifference, and thus have not sufficiently argued that the Defendants acted with deliberate indifference to the consequences.   Plaintiffs also have not sufficiently alleged that any individual Defendant had a direct role in establishing or maintaining any of the allegedly defective policies beyond their positions at the prison.   Thus, Plaintiffs' citation to *J.M.K.* is inapposite.

## 2.   The Measures Defendants Have Taken at HRYCI Weigh Against a Finding of Deliberate Indifference

The concrete measures that Defendants undisputedly took weigh against a finding of deliberate indifference.   Because Defendants took concrete, reasonable measures to mitigate the spread of COVID-19 in a prison, failing to eliminate all risk of COVID-19 will not suffice to establish deliberate indifference.   *See Hope*, 972 F.3d at 326–31.   Plaintiffs have explicitly stated several instances of Defendants taking measures to prevent the spread of COVID-19: the suspension of inmate visitation at HRYCI at the start of the pandemic, SAC ¶ 33, providing testing to individual inmates and correctional officers by request, *id.* ¶ 39, enacting policies to "limit contact between inmates housed in a particular pod and those housed in another pod," *id.* ¶ 50, providing some inmates with paper masks, *id.* ¶ 54, and providing masks to "all inmates who were

assigned to work at HRYCI as food service workers," *id.* ¶ 57.   As with *Mincy*, *Brown*, and *Wholaver*, so long as DOC and Defendants have taken concrete, reasonable measures to contain the spread of COVID-19, even if they have not eliminated all risk, Plaintiffs cannot prove deliberate indifference.   *See* discussion *supra* Section IV.B.   Therefore, the SAC fails to sufficiently allege that Defendants were deliberately indifferent.

Plaintiffs' citation to *Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023), is therefore inapposite. Reply Br. at 9.   In *Polanco*, the Court stated that "Defendants *did not* attempt to mitigate the risk," and "did not take precautions to avoid transferring COVID-positive inmates . . . or to decrease the likelihood that COVID-19 would spread from transferred inmates to [prison] employees." *Polanco*, 76 F.4th at 928.   By contrast, here Defendants *did* take some measures to attempt to mitigate the risk of COVID-19. *See* D.I. 570 at 14. Additionally, in *Polanco*, the defendants "repeatedly ignor[ed] express warnings that their COVID-19 policies were insufficient and dangerous," including those from a county public health officer and a group of health experts, and "did not follow those experts' recommendations" despite being advised to do so. 76 F.4th at 929. Here, by contrast, Plaintiffs neither allege that Defendants were made aware of how their policies might have been lacking, nor that Defendants were advised to change them.   *See generally* SAC. Therefore, Plaintiffs' attempt to cite to *Polanco* misses the mark.   Plaintiffs' citation to *Hampton v. California*, 83 F.4th 754 (9th Cir. 2023), Reply Br. at 9–10, also misses the mark because the court stated that "*Polanco* controls" regarding the analysis for deliberate indifference because the cases arose from the same facts and plaintiff's "allegations regarding Defendants' mental states mirror nearly word-for-word the allegations in *Polanco*."  *Hampton*, 83 F.4th at 767.

Plaintiffs' Reply Brief stresses that the Court must consider "the totality of the circumstances" when considering an Eighth Amendment challenge.  Reply Br. at 10 (citing *Hope*,

972 F.3d at 326).   By considering the measures that HRYCI and Defendants have taken in mitigating the risk of COVID-19, that is exactly what the Court does in finding that Plaintiffs have not alleged that Defendants acted with deliberate indifference.

### E.  Plaintiffs' Distinguishing of Cases is Unsupported

Plaintiffs suggest that this case is distinct from the cases *Wholaver*, *Brown*, *Muata*, and *Mincy* because the SAC "alleges constitutional harm to a large group of Plaintiffs," as opposed to "a single plaintiff, or several unrelated plaintiffs."  Reply Br. at 6, 8.   However, Plaintiffs provide no support for this argument; in fact, pleading standards for class action suits are the same as those for any other constitutional rights claim, even by an individual.   *See Carson v. HP Inc.*, 750 F.Supp.3d 376, 398 (D. Del. Sept. 26, 2024) (using, in the context of a class action lawsuit, the standards for Rule 12(b)(6) challenges that are used "generally," without any modifications based on the suit's status as a class action); *see also Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 763 (9th. Cir. 2023) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)) ("Except where a heightened pleading standard applies, a motion to dismiss under Rule 12(b)(6) is analyzed using the [general] pleading standard of Rule 8(a)").

Plaintiffs also attempt to distinguish this case from *Wholaver*, *Brown*, *Muata*, and *Mincy* by claiming that Defendants treated "Plaintiffs differently than . . . other inmates," by carrying out "one set of COVID mitigation measures for HRYCI as a whole, but . . . a lesser—and significantly less efficacious—set of measures for Plaintiffs."  Reply Br. at 4, 8, 10.   In attempting to make this argument, Plaintiffs point to ¶¶ 48–53 of the SAC.  *Id.* at 4.   However, the facts in the SAC do not support such a conclusion.   None of these paragraphs claim that Plaintiffs alone were subjected to a lesser set of COVID-19 prevention measures; instead, every paragraph in this section describes how "Plaintiffs *and other inmates*" were allegedly treated.   SAC ¶¶ 48–53 (emphasis added).

Plaintiffs' argument that they were treated differently from other inmates finds no support in this section, where every claim, in Plaintiffs' own words, applies to "other inmates" outside Plaintiffs' class. Thus, Plaintiffs' attempt to distinguish this case from past cases on this ground misses the mark.

## V.    CONCLUSION

For the above reasons, **IT IS HEREBY ORDERD** that:

1. Plaintiffs' Motion for Leave to File Second Amended Complaint (D.I. 564) is **DENIED**.

2. The Complaint is **DISMISSED WITH PREJUDICE**. Amendment is futile.

3. The Clerk of Court is directed to **CLOSE** the case.

**IT IS SO ORDERED.**

OCTOBER 24, 2025

_____

EVAN J. WALLACH

CIRCUIT JUDGE, SITTING BY DESIGNATION